IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JERRY VINCE** | CIVIL ACTION |
| | NUMBER: |
| -Versus- | |
| | JUDGE: |
| **TIM HOOPER, Warden** | MAGISTRATE: |

**MEMORANDUM OF LAW IN SUPPORT
OF PETITION FOR FEDERAL HABEAS CORPUS**

**MAY IT PLEASE THE COURT:**

NOW INTO COURT comes Jerry Vince, *Pro-Se* Petitioner, who respectfully presents his "Memorandum of Law in Support of Petition for Federal Habeas Corpus," and who respectfully prays this Honorable Court will accept and consider same in connection with his "Petition for Federal Habeas Corpus," pursuant to *28 U.S.C.A. § 2254*.

**PROCEDURAL HISTORY**

Jerry Vince was charged by Bill of Information Molestation of a Juvenile Under the Age of Thirteen, in violation of LSA-R.S. 14:81.2, and Sexual Battery of a Person Under the Age of Thirteen, in violation of LSA-R.S. 14:43.1 (Bill of Information 603564; Rec.p. 45). Mr. Vince was arraigned and pled not guilty to the charges on July 9, 2018 (Rec.p. 1).

On February 10, 2020, jury trial began (Rec.p. 18). Trial continued until February 13, 2020, on which date the jury returned with a unanimous verdict of guilty on both counts (Rec.pp. 29, 809-810). On March 10, 2020, the trial court sentenced Mr. Vince to the maximum ninety-nine years

imprisonment on each count to be served concurrently to each other in the Louisiana Department of Public Safety and Correction, with the first twenty-five years of each sentence to be served without the benefit of Probation, Parole, or Suspension of Sentence (Rec.pp. 31-2). Mr. Vince filed a Motion to Reconsider Sentence which was denied by the trial court on March 10, 2020 (Rec.p. 32).

On December 1, 2020, Mr. Vince, through appointed counsel filed his Original Brief on Appeal. On August 7, 2021, Mr. Vince filed his Supplemental Brief on Appeal (which was considered timely due to circumstances beyond Mr. Vince's control). On October 6, 2021, in Docket No.: 2020 KA 1054, the Louisiana First Circuit Court of Appeal denied relief.

Mr. Vince timely filed his Writ of Certiorari to the Louisiana Supreme Court on November 5, 2021, which was denied on March 2, 2022 in Docket No.: 2021-KO-1922 (333 So.3d 836). Mr. Vince timely filed for Post-Conviction Relief on April 5, 2023, which was denied on August 29, 2023. Mr. Vince timely filed his Notice of Intent to the district court on September 18, 2023.

On September 25, 2023, Mr. Vince timely filed for Supervisory Writs to the Louisiana First Circuit Court of Appeal, which was denied "On the Showing Made" on December 4, 2023.

On December 27, 2023, Mr. Vince timely filed for Supervisory Writs to the Louisiana Supreme Court, which was denied on May 7, 2024 in Docket No.: 2023-KH-1714 (Hughes, J, would grant and remand to trial court for consideration of the claim on the merits.

Mr. Vince now timely files for Habeas Corpus relief with this Court, requesting that this Court grant him relief for the following reasons to wit:

## STATEMENT OF THE FACTS

LP was Mr. Vince's stepdaughter when Mr. Vince was married to her mother. After the divorce, of Mr. Vince and LP's mother, LP disclosed to her high school counselor that she had been inappropriately touched by her step-father (Rec.p. 692), LP told police that the abuse had occurred years earlier before

her mother and Mr. Vince were divorced (Rec.p. 601). LP's mother testified that she and Mr. Vince got married when LP was four years old and were married for six and a half to seven years, divorcing when LP was approximately 11 years old (Rec.p. 643). LP spoke with an examiner at Kid's Hope Care Center and again disclosed in a recorded session that Jerry Vince had sexually abused her on multiple occasions while her mother was married to him (Rec.p. 693). Mr. Vince was subsequently arrested and charged with Molestation of a Juvenile Under the Age of Thirteen and Sexual Battery of a Person Under the Age of Thirteen.

## FEDERAL QUESTIONS PRESENTED

**Mr. Vince's conviction was obtained in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and which is contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.**

## TIMELINESS OF THIS PETITION

A 1-year period of limitation shall apply to a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the Constitution of laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *28 U.S.C.A. § 2244(d)(1)*. The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. *28 U.S.C.A. § 2244(d)(2)*.

*Artuz v. Bennett*, 121 S.Ct. 361, 531 U.S. 4 (2000); *Carey v. Saffold*, 122 S.Ct. 2134, 536 U.S. 214 (2002).

Mr. Vince's conviction and sentence was affirmed by the Louisiana Supreme Court on January 28, 2020 in Docket No.: 2019-1860. Mr. Vince now timely files his Petition for Writs of Habeas Corpus into this Honorable Court, and requests that this Court grant him relief for the following reasons to wit:

## STANDARD OF REVIEW

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *28 U.S.C.A. § 2254(d)(2)*. *Williams v. Taylor*, 120 S.Ct. 1495, 529 U.S. 362 (2000); *Yarborough v. Alvarado*, 124 S.Ct. 2140, 541 U.S. 652 (2004).

## ISSUES FOR REVIEW

**1. Reasonable jurists would determine that the trial court abused its discretion by permitting three distinct witnesses to testify under LSA-C.E. Art. 412.2; 15:435 & 436; La.C.Cr.P. Arts. 480 & 481.;**

**2. Reasonable jurists would determine that maximum sentences as applied to the facts of this case and Mr. Vince are unconstitutionally excessive.**

## ARGUMENT OF LAW

### ISSUE NO. 1

**Reasonable jurists would determine that the trial court abused its discretion by permitting three distinct witnesses to testify under LSA-C.E. Art. 412.2; 15:435 & 436; La.C.Cr.P. Arts. 480 & 481.**

Mr. Vince next shows that the trial court committed an abuse of discretion when it permitted the State to adduce testimony from three (3) additional witnesses regarding acts of sexual abuse by Mr.

Vince when they were minors pursuant to LSA-C.E. Art. 412.2, which provides as follows:

- A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
- B. In a case in which the state intends to offer evidence under the provisions of this Article, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
- C. This Article shall not be construed to limit the admissibility or consideration of evidence under any other rule.

Under LSA-C.E. Art. 412.2, the admissibility of this evidence is subject to the balancing test contained in LSA-C.E. Art. 403, which provides that evidence which is relevant may be excluded if its admission would result in undue prejudice, confusion, or waste of time. LSA-C.E. Art. 403. The concerns animating Article 403 have been explained as follows:

> Any inculpatory evidence is "prejudicial" to a defeated, especially when it is "probative" to a high degree. As used in the balancing test, "prejudicial" limits the introduction of probative evidence of prior misconduct only when it is unduly and unfairly prejudicial. The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged.

*State v. Rose*, 949 So.2d 1236, 1244 (La. 2/22/07).

A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. *State v. Cosey*, 779 So.2d 675, 684 (La. 11/28/00). The same standard of review is applied to rulings on the admission of other crimes evidence and evidence under Art. 412.2. *State v. Merritt*, 877 So.2d 1079, 1085 (La. App. 5th Cir. 6/29/04); *State v. Humphries*, 927 So.2d 650, 656 (La. App. 2nd Cir. 4/12/06).

The age, evidence, and unique circumstances of this case combined to create a situation where the concerns underlying Article 403's balancing test should have counseled in favor of limiting, to some degree, the quantity of evidence the State was permitted to present under Art. 412.2.

In this case, the Submitted three "other crimes" allegations, and thus, Mr. Vince was tasked with

having to present a defense for the case-in-chief; but, also having with defending against three other sets of accusations (which had not been prosecuted due to lack of evidence or for some credibility issue). This Court must determine that these "other crimes" were submitted to the jury simply to inflame the jury and to misrepresent Mr. Vince as a "bad person" in general.

This created undue risk that the jury would conclude that Mr. Vince was guilty based simply on the State's portrayal of him as a serial child abused, rather than limiting its decision to the question of his guilt or innocence with respect to the charged offense.

Additionally, the difficulty of defending against a single charge was compounded and multiplied by the addition of three other alleged victims and offenses. Mr. Vince shows that, in this case, these additional allegations had been "back-doored" by State in order to obtain a conviction in this matter for the following reasons to wit:

This Court must note that the testimony adduced during the course of this trial proves that the "other crimes" evidence submitted pursuant to LSA-C.E. Art. 412.2. were more prejudicial than probative due to the fact that the allegations have previously dismissed by the investigators; and, the testimony was quite *remarkable* and *unbelievable*. Could this be the reasons that Mr. Vince was never prosecuted for these allegations? Most likely.

These "other crimes" had previously been reported to the officials. But, testimony presented during the trial explained why the officials declined prosecution for them. Had there been any credibility or believability in these "other crimes," Mr. Vince would have been prosecuted for such rather than the State using such pursuant to 412.2 evidence.

Mr. Vince contends that the district court erred in allowing this particular "other crimes" evidence in these proceedings due to the fact that the allegations are just *"truly unbelievable"* and incredible to the point that it could have been presented in a fairy tale book.

SM actually testified that Mr. Vince had an I-Phone in the toothbrush holder "taking pictures of her while she was in the bathroom." However, the phone had only taken a picture of her feet (Rec.p. 440). Common sense would tell you that if the phone is in the toothbrush holder (on the back of the sink), it would be *impossible* for the camera to take a picture of her feet. As the phone was allegedly placed on top of the sink, in order to photograph SM's feet, the phone had to be taken off of the sink, and pointed at the feet due to the fact that the sink and counter would be blocking her feet.

Most amazingly, neither party brought to light the fact that, in order for the tablet, or the phone to be taking photos, or videos, *someone* had to actually be holding the device, and activating the device (hitting the button) in order for either device to film or photograph.

Furthermore, as SM testified that she had deleted all of the photos and videos from the tablet and phone, the State was unable to present the actual photos and videos to the jury (Rec.p. 441). However, as these photos and videos would have been vital to the State's case, why weren't the electronic devices forensically searched? According to the testimony of Detective Carly Messina, even though the devices were available, she declined to obtain a search warrant for them. It is highly likely that she determined that a warrant would not be necessary due to the statement from SM stating that the phone had photographed her feet from the toothbrush holder.

Mr. Vince contends that the district court erred in allowing the testimony of this "other crimes" evidence due to the fact that, although he was eventually arrested and charged with this allegation in 2015 (Rec.p. 602), the State declined prosecution.

As there was insufficient evidence to pursue these charges, the State simply "back-doored" the charge through the testimony of its witnesses. The Court has set the standard for "other crimes evidence" in *State v. Prieur*, 277 So.2d 126 (La. 1973). Admissibility of other acts of misconduct involves substantial risk of grave prejudice to a defendant; the probative value of evidence upon related

offenses in relation to the charged offense should therefore be weighed in light of its possible prejudicial effect, its tendency to influence the triers of fact improperly as to present guilt of accused. LSA-R.S. 15:445, 15:446; LSA-C.E. 404.

Detective Messina testified to the fact that these "other crimes" allegations had either been dismissed, or they had failed to pursue the issue due to insufficient evidence (Rec.p. 601), and that one the alleged victims had provided inconsistent disclosure during the forensic interview (Rec.p. 605).

This Court must note that *Falsus en uno, falsus en omnibus* Simply put, a liar cannot be believed on the one hand, but not the other. This Court must also note that if the "testimony alone is sufficient to convict," then the Court must also consider that "proven false testimony should be sufficient to acquit," as the testimony from DB was so extravagant that it goes beyond *"unbelievable."*

These alleged victims which were introduced to the jury pursuant to Article 412.2 denied Mr. Vince the right to a fair trial by, *inter alia*, depriving him of his right to be presumed innocent until proven guilty. *Spencer v. Texas*, 385 U.S. 554, 573-75, 87 S.Ct. 648, 658-59, 17 L.Ed.2d 606, 619-20 (1967) ("Our decisions ... suggest that evidence of prior crimes introduced for no purpose other than to show criminal disposition would violate the Due Process Clause ... because it jeopardizes the presumption of innocence.")(Warren, C.J., dissenting); *State v. Johnson*, 94-1379 (La. 11/27/95), 664 So.2d 94, 99 (A defendant is not to be "convicted of a present offense simply because he is perceived as a bad man, irrespective of the evidence of his guilt or innocence. A conviction should be based on guilt and not on character.").

Simply put, it allows a jury to assume the guilt of a defendant at trial on one charge because he is "ruled" guilty by the court of a different crime. This is true even if the different crime was never charged, and the accused was never tried and convicted of this "other crime." Essentially, an accused is not presumed innocent of either charge.

Like its Federal counterparts — **FRE 413** and **414** — **Article 412.2** is designed to alter, in a narrow, limited fashion, the rules of admissibility for other crimes evidence in the specific context of sexual offenses. It is not designed as an "open sesame" to freely allow admission of highly prejudicial other crimes evidence under the radar of judicial scrutiny entirely.

Whenever other crimes evidence consists of an uncharged, unadjudicated offense, the trial court must make a threshold determination that (1) the other crime occurred, and, (2) that the accused is the person who committed it. The court must then weigh its probative value against its prejudicial effect <u>prior</u> to admitting it.

Louisiana law makes it clear that this determination on the uncharged, alleged conduct must be conducted outside the presence of the jury. La. Code of Evidence, **Article 103C** requires that, "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or asking questions in the hearing of the jury." And **104C** requires that, "[h]earings on matters to be decided by the judge alone shall be conducted out of the hearing of the jury when the ends of justice require."

Should the judge ultimately determine that there is insufficient evidence — or no proof — that the uncharged offense occurred, or that the accused committed it, there is simply no way that a jury could follow an instruction to simply ignore the erroneous evidence placed before them during trial.

Additionally, to the extent that the language of Article 412.2 is interpreted differently than the language of Article 404 (B), Article 412.2 denies Mr. Vince his right to Due Process of Law inasmuch as the Article admits evidence of **"acts which indicate a lustful disposition toward children"** without requiring the State to provide meaningful notice at a pre-trial hearing of what it intends to offer to show a "lustful disposition." Because the language of Article 412.2 is so vague, *a fortiori* Mr. Vince should be granted a pre-trial hearing and a determination of the evidence.

Further, Article 412.2 denies Mr. Vince his rights to a fair trial and to Due Process of Law by admitting evidence of a "lustful disposition" when he is charged with other sexual crimes. This issue was squarely decided by the Supreme Court in *State v. Kennedy*, 2000-1554 (La. 4/3/01), 803 So.2d 916, where the defendant was charged with Aggravated Rape of an 8-year old child and the State sought to introduce evidence of the defendant's commission of another unadjudicated rape of another 8- or 9-year old child some sixteen years before. The defendant in *Kennedy*, just as in the instant case categorically denied the charge. The Court, in holding that evidence of the other crime was inadmissible, stated that "[i]n **general intent crimes, like Aggravated Rape**, the criminal intent necessary to sustain a conviction is established by the very doing of the proscribed acts ... Absent a genuine dispute as to whether the accused intended to commit a charged act, **evidence of extraneous crimes is inadmissible** for the ostensible purpose of showing intent." *Id* at 923 (citations omitted) (Emphasis added). In conclusion the Court continued:

> Yet, the problem presented by this case is that, because the evidence sought to be introduced does not bear upon an essential element of the offense, and because motive, intent, and identity are otherwise not genuinely at issue, evidence that the defendant has allegedly raped another female place under his supervision on a prior occasion is but another way of demonstrating that he has the propensity to commit such crimes and that the act charged against him probably occurred just as the present victim claims. Such prior sexual misconduct evidence, despite having certain relevance and probative value, is nonetheless inadmissible.

These alleged victims which were introduced to the jury pursuant to Article 412.2 denied Mr. Vince the right to be free from cruel and unusual punishment inasmuch as any conviction obtained through the use of 412.2 evidence would be in violation of his constitutional rights to Due Process, Equal Protection of the Law, a fair trial, to present a defense, to the effective assistance of counsel, and to confront and cross-examine witnesses. La.C.Cr.P. Art. 878.

The tremendous danger of unfair prejudice posed by uncharged, unadjudicated other sex crimes evidence being erroneously introduced to the jury was simply ignored in this case. *NO* amount of

balancing can be accomplished judiciously unless the facts of the other crimes are developed. This must be done out of the presence of the jury.

The next question is: Did these "other crimes evidence" attribute to the conviction? Of course it did, as these other alleged victims purported Mr. Vince as a sexual predator who had a propensity to sexually abuse younger females.

Mr. Vince therefore requests that this Court remand this matter for a new trial with an order directing the trial court to omit this "quite unbelievable" testimony to be presented to the jury in order to avoid undue prejudice to Mr. Vince.

## SUMMARY

In this case, the State was allowed to submit "other crimes" allegations pursuant to LSA-C.E. Art. 412.2. Although these allegations had been previously investigated, with Mr. Vince being arrested for one of the allegations, charges were not pursued due to insufficient evidence, or inconsistent statements by the alleged victims. The "other crimes" allegations were then "back-doored" during the trial of Mr. Vince in order to prejudice the jury against him by "inflaming" them towards Mr. Vince, and an attempt to show him as a "bad person" to the jury.

This Court cannot determine that the district court had properly considered these Art. 412.2 allegations pursuant to the "balancing test" of La.C.Cr.P. Art. 403, as the prejudicial effect of these "other crimes" allegations *greatly outweighed* the probative value.

## ISSUE NO. 2

**Reasonable jurists would determine that maximum sentences as applied to the facts of this case and Mr. Vince are unconstitutionally excessive.**

Jerry Vince was sentenced to maximum concurrent sentences of ninety-nine years imprisonment in the Louisiana Department of Public Safety and Correction. The court failed to consider the mitigating factors such as Mr. Vince's lack of a violent criminal history, and his lack of recent criminal history. In

light of these mitigating factors, the trial court imposed a constitutionally excessive sentence.

Article I, § 20 of the Louisiana Constitution of 1974 provides that no law shall subject any person to excessive punishment. Louisiana Constitution of 1974, Art. I, § 20. In upholding this mandate, the Louisiana Supreme Court has decreed that although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La. 1979). In giving guidance to a review of excessiveness, the Louisiana Supreme Court has explained that when a sentence imposes or constitutes nothing more than needless infliction of pain and suffering, it is unconstitutionally excessive. *State v. Bonanno*, 384 So.2d 355 (La. 1980); *State v. Smith*, 839 So.2d 1 (La. 2003).

A sentence is considered grossly disproportionate when the crime and punishment, considered in light of the harm done to society, shocks the sense of justice. *State v. Hogan*, 480 So.2d 288 (La. 1985); *State v. Thompson*, 631 So.2d 555 (La. App. 2nd Cir. 1/19/94).

The sentencing guidelines are among the factors to be considered in this case by the trial judge in his determination as to what would be a fair and just sentence (i) in proportion to the severity of this crime, (ii) in light of this particular defendant, and (iii) keeping in mind that the maximum sentences should be reserved for the most egregious defendants. *State v. Brogden*, 457 So.2d 616 (La. 1984).

A sentence must be based on the instant case (including the seriousness of the offense, or whether there was any violence), the background of the defendant (including his age, family ties, marital status, health, employment record, any problems such as mental illnesses, drug addiction, or retardation), the proportionality of the sentence to the seriousness of the offense, and whether there is any social purpose and need to the infliction of pain and suffering on this defendant, and, if so, how much.

Although the imposition of a sentence within statutory limits may violate defendant's constitutional rights against excessive punishment, the trial judge has wide discretion in imposition of sentences

subject only to the constitutional limitations on excessive sentences, and sentences will be set aside absent manifest abuse of discretion. *State v. Donahue*, 408 So.2d 1262 (La. 1982); *State v. Merdith*, 400 So.2d 580 (La. 1981).

The sentencing ranges for Molestation of a Juvenile Under the Age of Thirteen and Sexual Battery of a Person Under the Age of Thirteen are identical: imprisonment at hard labor for not less than twenty-five years nor more than ninety-nine years with at least twenty-five years of the sentence imposed to be served without the benefit of Probation, Parole, or Suspension of Sentence. LSA-R.S. 14:81.2 and LSA-R.S. 14:83.1. Mr. Vince was sentenced to maximum sentences for each of these charges and the sentences were ordered to be served concurrently.

In stating his reasons for the maximum sentences, the trial court stated, "I reviewed the list of mitigating factors and have found none applicable to this case" (Rec.p. 824). However, the trial court failed to consider that Mr. Vince's criminal record consisted of non-violent offenses that occurred when he was a young person in his twenties (Rec.pp. 716-7, 729). The lack of a violent criminal history should have been considered as a mitigating factor, and the trial court abused his discretion by failing to consider it.

Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. As a general rule, the maximum sentences are appropriate only in cases involving the most serious violation of the offense and the worst type of offender. *State v. Freedon*, 655 So.2d 687 (La.App. 2nd Cir. 5/10/95). However, a trial court has wide discretion to sentence within the statutory limits and absent a showing of manifest abuse of discretion, we do not set aside a sentence as excessive. *State v. Thompson*, 631 So.2d 555 (La.App. 2nd Cir. 1/19/94).

The trial court emphasized the nature of these offenses in justifying the maximum sentences in this case. However, the court failed to consider the nature of the offender and whether he was the worst

type of offender to justify maximum sentences. The court made no mention that Mr. Vince has no prior convictions for crimes of violence and that his felony convictions were in the nineties for Simple Burglaries and Theft with the last one occurring in 1999 (Rec.p. 717).

While the offenses for which Mr. Vince was convicted in the case sub judice are serious in nature, the trial court failed to give adequate consideration to any relevant mitigating factors as required by La.C.Cr.P. Art. 894.1. Additionally, as Mr. Vince is forty-five years old, the ninety-nine year sentences are essentially a life sentence as applied to him. Accordingly, the maximum sentences of ninety-nine years imprisonment are constitutionally excessive in this case.

Mr. Vince has been convicted of Molestation of a Juvenile Under the Age of Thirteen and Sexual Battery of a Person Under the Age of Thirteen. Mr. Vince was sentenced to maximum concurrent sentences of ninety-nine years imprisonment to be served in the Louisiana Department of Public Safety and Correction. Additionally, the trial court ordered that the first twenty-five years of each sentence are to be served without the benefit of Probation, Parole, or Suspension of Sentence. The trial court failed to consider Mr. Vince's lack of a violent criminal history and lack of recent criminal history in imposing these severe sentences. In light of these mitigating factors, these maximum sentences as applied to Mr. Vince are unconstitutionally excessive.

## CONCLUSION AND PRAYER

**WHEREFORE, PREMISES OF MR. VINCE CONSIDERED:**

Mr. Jerry Vince #326419, respectfully prays that this Honorable Court will accept his foregoing "Memorandum of Law in Support of Petition for Federal Habeas Corpus" and consider same in concert with his "Application for Federal Habeas Corpus" pursuant to *28 U.S.C.A. § 2254*. Mr. Vince further prays that this Honorable Court, after due consideration of the law and the facts presented by him in these proceedings, that Petitioner is granted federal habeas corpus and that his underlying state conviction and sentence is vacated, and set aside.

Respectfully submitted,

Jerry Vince, #326418
General Delivery
Louisiana State Penitentiary
Angola, Louisiana 70712

## CERTIFICATE OF SERVICE

I, Jerry Vince #326419, hereby certify that a true and correct copy of the forgoing has been served upon the Respondent herein, through the Office of the District Attorney, Parish of St. Tammany, by placing same in the Institution's Legal Mail System for depositing in the U.S. Mail, properly addressed and with proper, first-class postage pre-paid, this ___ day of May, 2025.

Jerry Vince